THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TARA PERETTO,<br><br>                Plaintiff,<br><br>v.<br><br>MICHAEL W. ERICKSON; UTAH COUNTY CONSTABLE'S OFFICE; ROB KOLKMAN; OFFICE OF THE UTAH COUNTY CONSTABLE, LLC; UTAH PROCESS INC.; CONSTABLE KOLKMAN LLC; THE CHERRINGTON FIRM; and JOHN DOES 1–5,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [21] CONSTABLE DEFENDANTS' MOTION TO DISMISS AND GRANTING [22] CHERRINGTON'S MOTION TO DISMISS**<br><br>Case No. 1:23-cv-00025-DBB-DBP<br><br>District Judge David Barlow |

Before the court are Defendants Michael W. Erickson, Utah Process, Inc., Rob Kolkman, and Constable Kolkman LLC's (collectively "Constable Defendants"),[1] and The Cherrington Firm's ("Cherrington")[2] motions to dismiss Plaintiff Tara Peretto's Second Amended Complaint ("the Complaint").[3] For the following reasons, the court grants Cherrington's Motion, but denies Constable Defendants' Motion.[4]

---

[1] Constable Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. ("Constables' Mot."), ECF No. 21.

[2] Def. The Cherrington Firm's Mot. to Dismiss Pl.'s Second Am. Compl. ("Cherrington's Mot."), ECF No. 22.

[3] Second Am. Compl., ECF No. 18.

[4] Ms. Peretto requested a hearing on Defendants' Motions. *See* Pl.'s Request for Hearing, ECF No. 33. The court has determined that a hearing would not materially assist it in resolving the Motions. *See* DUCivR 7-1(g).

## BACKGROUND

Defendant Cherrington is a debt collection law firm,[5] which, on December 13, 2017

obtained a judgment in state court against Ms. Peretto for $2,289.03.[6] The state court then

granted a Writ of Execution for $2,606.18.[7] Cherrington hired Mr. Erickson, Utah Process Inc.,

and the Utah County Constable's Office to collect the debt[8] from February 2021 to September

2022, which sought to collect the debt through a series of letters and telephone calls to Ms.

Peretto.[9] Ms. Peretto paid $100.00 to Mr. Erickson, who forwarded that money to Cherrington.[10]

Around February 2023, Cherrington hired Rob Kolkman and Constable Rob Kolkman LLC to

collect the debt.[11] On February 14, 2023, Constable Defendants sent two collection letters to Ms.

Peretto, one of which indicated that the debt had been assigned from Mr. Erickson and Utah

Process, Inc. to Mr. Kolkman and Constable Kolkman LLC.[12] These letters also included a

Notice of Sale.[13]

On February 24, 2023, Mr. Kolkman and Constable Kolkman LLC sent Ms. Peretto

another letter that included a Notice of Sale, which demanded payment in order to stop the

seizure sale of Ms. Peretto's personal property.[14] Ms. Peretto called Constable Kolkman LLC to

discuss the debt and the Notice of Sale.[15] During this call, an employee of Constable Kolkman

---

[5] Second Am. Compl. ¶ 12.
[6] *Id.* ¶¶ 32–34; *see also Brigham Young University v. Peretto*, No. 179104089 (4th Dist. Ct. Utah).
[7] Second Am. Compl. ¶ 36.
[8] *Id.* ¶ 37.
[9] *Id.* ¶¶ 44–49.
[10] *Id.* ¶ 42.
[11] *Id.* ¶ 50.
[12] *Id.* ¶¶ 53–54.
[13] *Id.*
[14] *Id.* ¶¶ 55–57.
[15] *Id.* ¶ 58–69.

LLC confirmed that Cherrington had granted the LLC the authority to collect the debt.[16] During

this call, the employee is alleged to have made a number of threats regarding the scheduled sale

and added fees and costs.[17] No such sale was planned and no such sale occurred.[18] In other

words, despite that the Writ of Execution was filed on December 13, 2017, for over five years,

Defendants did not seek to seize and sell Plaintiff's property, and instead engaged in a number of

other efforts to try to recover the debt.

On July 19, 2023, Ms. Peretto filed her Amended Complaint, seeking relief under the Fair

Debt Collection Practices Act ("FDCPA"), the Utah Consumer Sales Practices Act, and state tort

law.[19] Ms. Peretto alleges that Cherrington is vicariously liable for the acts of the Constable

Defendants in seeking to collect on the debt.[20] On August 16, 2023, Defendants moved to

dismiss.[21] The Motions were fully briefed on September 25, 2023.[22] The case was assigned to

the undersigned on November 20, 2023.[23]

## STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"[24] A claim is plausible "when the plaintiff pleads factual content that allows the court to

---

[16] *Id.* ¶ 51.
[17] *Id.* ¶¶ 63, 65.
[18] *Id.* ¶¶ 78–79.
[19] *See id.* ¶¶ 157–256.
[20] *Id.* ¶¶ 82–89.
[21] *See* Constables' Mot.; Cherrington's Mot.
[22] *See* Constable Defs.' Reply in Support of Mot. to Dismiss Pl.'s Second Am. Compl. ("Constables' Reply"), ECF No. 27; Def. The Cherrington Firm's Reply Memorandum in Further Support of it's Mot. to Dismiss Pl.'s Second Am. Compl. ("Cherrington's Reply"), ECF No. 28.
[23] *See* ECF No. 30.
[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."[26] And while the court accepts as true all the

factual allegations of the pleading, it does not accept as true legal conclusions or "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements."[27]

**DISCUSSION**

Defendants raise three issues: First, whether Constable Defendants are "debt collectors"

covered by the FDCPA; second, whether Ms. Peretto sufficiently pleads that the Firm is liable

under a theory of *respondeat superior*; and third, whether the court should exercise supplemental

jurisdiction over Ms. Peretto's state-law claims. The court addresses each in turn.

### I.      "Debt Collectors" under the FDCPA

Generally, the FDCPA prohibits a "debt collector" from engaging in harassing conduct,

using false or misleading representations, or using unfair or unconscionable means to collect a

debt.[28] The Constable Defendants argue that Ms. Peretto has not stated a claim under the FDCPA

because they are not "debt collector[s]" under the Act.[29] Cherrington argues that to the extent

Constable Defendants are immune from suit, Ms. Peretto's claim fails against it as a matter of

---

[25] *Id.*

[26] *Id.*

[27] *Id.* Plaintiff also cites pre-*Iqbal*/*Twombly* motion to dismiss caselaw from the 1980s and a treatise from the 1960s. *See* Pl.'s Memo. in Opp'n to Constable Defs.' Mot. to Dismiss ("Pl.'s Constable Opp'n") 2, ECF No. 23; Pl.'s Memo. in Opp'n to the Cherington Firm's Mot. to Dismiss ("Pl.'s Cherrington Opp'n") 2, ECF No. 24. This authority was abrogated by *Iqbal* and *Twombly* many years ago. Citation to it for purposes of the relevant motion to dismiss standard is improper.

[28] *See Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (quoting 15 U.S.C. §§ 1692d–1692f).

[29] Constables' Mot. 6.

law, even if Ms. Peretto has adequately alleged vicarious liability.[30] The court addresses each argument in turn.

Under the FDCPA, "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[31] However, per 16 U.S.C. 1692a(6)(C), "the term does not include—. . . any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties."[32]

At the outset, the court concludes that this definitional exception is an affirmative defense, not an element of a FDCPA claim. To hold otherwise would be to suggest that all plaintiffs under the FDCPA must affirmatively plead facts to suggest that a given defendant does not fall within any one of the six exceptions from the definition of "debt collector" listed under 15 U.S.C. § 1692a(6). In order for the court to grant a motion to dismiss based on an affirmative defense, the complaint must admit "all the elements of the affirmative defense by alleging the factual basis for those elements."[33] Two elements are at issue for dismissal to be proper here: (1) that Constable Defendants are "officers" of the State; and (2) that they were acting in performance of their official duties.

---

[30] *See* Cherrington's Mot. 3; Cherrington's Reply 3–5.
[31] 15 U.S.C. § 1692a(6).
[32] *Id.* § 1692a(6)(C).
[33] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

### A. Officers of the State

Constable Defendants argue that they are officers of the State of Utah.[34] The Tenth Circuit has not addressed the precise scope of this exception. The court first addresses whether constables are "officers" of the State under Utah law, and second, whether the particular Defendants here fall within the exception.

The Utah Code authorizes municipalities to appoint or nominate constables through a process by which the municipal legislature creates a nominating commission, the commission votes to recommend appointment, and the legislature approves appointment.[35] Indeed, "[t]o qualify as a constable, a person shall be certified as a special function peace officer in the state."[36] And constables are appointed for six year terms.[37] Finally, the Utah Code outlines the official duties and powers of a constable, including "maintain[ing] a public office,"[38] serving legal process within Utah,[39] and removing a tenant.[40] Finally, the Utah Code contains uniform requirements for constables when the constables are acting in performance of an official duty.[41] Whatever the precise contours of the term "officer" of a State are, the court concludes that having public powers and duties pursuant to an appointment by a municipal legislature for a set term falls well within the plain meaning of "officer." This conclusion is in accord with prior authority from this court.[42]

---

[34] Constables' Mot. 6.
[35] Utah Code § 17-25a-1.
[36] *Id.* § 17-25a-2(1).
[37] *Id.* § 17-25a-3(1)(a).
[38] *Id.* § 17-25a-2(2)(b).
[39] *Id.* § 17-25-5.
[40] *Id.* § 78B-6-812(1)(a).
[41] *Id.* § 17-25-6.
[42] *See Sexton v. Poulsen & Skousen P.C.*, 372 F.Supp.3d 1307, 1316 (D. Utah 2019).

Ms. Peretto argues that the officer of the State exception "does not extend to those who are merely in a contractual relationship with the government" and that "[i]n Utah, a constables' [sic] authority derives solely from a contractual relationship with the county."[43] Several circuits have recognized this distinction. For instance, in *Pollice v. National Tax Funding, L.P.*, the Third Circuit held that a private limited partnership that had a contract with a municipality and a school district was not an officer of the State for purposes of the FDCPA.[44] Similarly, in *Brannan v. United Student Aid Funds, Inc.*, the Ninth Circuit held that a private nonprofit organization with a government contract with the U.S. Department of Education was not an officer of the federal government.[45] Ms. Peretto makes a number of arguments to suggest that Constable Defendants are in fact merely in a contractual relationship with the government; all are inapposite. Tellingly, the situation alleged in the Complaint here looks nothing like the situations in *Pollice* or *Brannan*.

First, Ms. Peretto cites to Utah Code § 17-25a-1 for this proposition.[46] But nothing in that section indicates that a constable is solely in a contractual relationship with the municipality. Instead, that section indicates that constables are appointed officials. Next, Ms. Peretto cites to the Utah County Code,[47] which contains a provision stating that "County constables are independent contractors and are responsible for their own actions and the actions of their

---

[43] Pl.'s Constable Opp'n 3 (quoting *Pollice v. Nat'l Tax Funding*, 225 F.3d 379, 406 (3d Cir. 2000, *abrogated on other grounds as recognized in* 898 F.3d 364 (3d Cir. 2018)).
[44] 225 F.3d at 385–86, 406.
[45] 94 F.3d 1260, 1262–63 (9th Cir. 1996).
[46] *See* Pl.'s Constable Opp'n 3 n.14.
[47] *See id.*

deputies . . . ."[48] But given that constables are appointed to a public office under state law, the court has serious doubts as to the effect of this provision. Municipal law does not supplant state law,[49] and Ms. Peretto has cited no caselaw suggesting otherwise.

Third, Ms. Peretto suggests that the fact that the debt here is not a government debt should influence the court's analysis.[50] But that fact is immaterial to whether a given actor is a public officer or a private actor. Finally, Ms. Peretto suggests that the Utah Code itself rejects that constables are government "officers."[51] Indeed, for purposes of the County Officers and Employees Disclosure Act, "[t]he use of the word 'officer' in this part is not intended to make appointed persons or employees 'officers' of the county."[52] That provision is limited to one chapter of the Utah Code; it does not affect the provisions related to constables.

Thus, the court agrees with its previous conclusion in *Sexton*; constables are officers of the State under Utah law given that they are appointed, serve a term of office, and exercise public powers.

But that does not necessarily mean that the Constable Defendants here are protected from liability. Because the exception contained in 15 U.S.C. § 1692a(6)(C) is an affirmative defense and Defendants have raised this in a motion to dismiss, the facts alleged in the Complaint must

---

[48] Utah County Code § 2.05.020, https://utahcounty.municipalcodeonline.com/book?type=ordinances#name=2.05_County_Constables [https://perma.cc/G5UD-KUXM].
[49] *See, e.g.*, *State v. Hutchinson*, 624 P.2d 1116, 1121 (Utah 1980) ("[L]ocal governments are without authority to pass any ordinance prohibited by, or in conflict with, state statutory law."); *Redwood Gym v. Salt Lake County Comm'n*, 624 P.2d 1138, 1144 (Utah 1981) ("[L]ocal governments may legislate by ordinance in areas previously dealt with by state legislation, provided that the ordinance in no way conflicts with existing state law."); *see also* Utah Code § 17-25a-1(1)(a)(ii) ("If a county or city decides to appoint constables, the county or city shall nominate and appoint constables *in accordance with this chapter.*" (emphasis added)).
[50] *See* Pl.'s Constable Opp'n 5.
[51] *Id.* at 4.
[52] Utah Code § 17-16a-3(1).

8

show that Constable Defendants are in fact constables under the Utah Code. The Complaint alleges that Mr. Erickson and Mr. Kolkman "hold themselves out to be duly appointed Utah County Constables with all the powers and authority granted to constables by Utah law."[53] The Complaint also alleges that "[b]y employing the constables to collect debt, Cherrington and the constable Defendants each falsely implied or represented the constable Defendants have sponsorship, approval, or affiliations with the State of Utah or Utah County they do not have."[54] These allegations do not allege facts that satisfy this element of the affirmative defense; at best, they give an impression that Constable Defendants *could be* duly appointed constables under Utah law, making them officers of the State. And while the court can take judicial notice of matters of public record—which presumably includes the appointment of constables in Utah— when considering a motion to dismiss,[55] no party has presented any public records suggesting that Constable Defendants have in fact been appointed constables under Utah law. Thus, dismissal is improper.

However, even assuming the Complaint does allege that Constable Defendants were constables under Utah law, and thus, were officers of the State, the Complaint does not allege that they were acting in performance of their official duties.

## B.  Acting in Performance of Official Duties

Constable Defendants argue that they were acting within the scope of their official duties because they were acting pursuant to a Writ of Execution.[56] Ms. Peretto makes several arguments to the contrary.

---

[53] Second Am. Compl. ¶ 13.
[54] *Id.* ¶ 109.
[55] *See Hooper v. City of Tulsa*, 71 F.4th 1270, 1279 n.8 (10th Cir. 2023).
[56] Constables' Mot. 7–9.

Before the court turns to the dispositive arguments raised by the parties, because the alleged debt collection actions in this case stem from a Writ of Execution issued by a Utah court, a preliminary issue exists as to whether the court may even consider the Writ at this stage of the case. The Writ was not attached as an exhibit to the Complaint, but Constable Defendants have included it as an exhibit on their Motion to Dismiss.[57] Ms. Peretto argues that the court must convert Constable Defendants' Motion to Dismiss into one for summary judgment under Rule 12(d) if it is to consider the Writ.[58] That argument is inapposite. The court may take judicial notice of a public document without converting a motion to dismiss into one for summary judgment, particularly where, as here, the Writ at issue is easily viewable in the state court docket and is central to Ms. Peretto's Complaint.[59] The court turns next to the arguments raised by Ms. Peretto.[60]

First, Ms. Peretto argues that whether Constable Defendants were acting within the scope of their official duties "is a question of fact not properly resolved by a motion to dismiss."[61] The question on a motion to dismiss is whether the complaint alleges sufficient facts, taken as true, to state a claim for relief.[62] The court could conclude that the facts alleged do or do not suffice to state a claim (or here, an affirmative defense) as a matter of law. Thus, whether something is a question of fact at a later stage in the proceedings is not relevant here.

---

[57] *See* Writ of Execution, ECF No. 21, Exh. A.

[58] *See* Pl.'s Constable Opp'n 9 n.40.

[59] *Hooper*, 71 F.4th at 1279 n.8; *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed., Sept. 2023 Update) (noting that "items of unquestioned authenticity that are referred to in the challenged pleading and are 'central' or 'integral' to the pleader's claim for relief" may be considered on a motion to dismiss without converting it into one for summary judgment).

[60] In addition, Ms. Peretto suggests that the Writ is inadmissible under Federal Rules of Evidence 401, 403, 802, 901, and 1005. Pl.'s Constable Opp'n 9 n.43. These objections are meritless.

[61] Pl.'s Constable Opp'n 6.

[62] *Iqbal*, 556 U.S. at 679.

Second, Ms. Peretto argues that the constables were not acting pursuant to their official duties because they were not registered as debt collectors under Utah law.[63] The Utah Code (at the time relevant to this case) required debt collectors to register with the Division of Corporations and Commercial code.[64] But here, assuming Constable Defendants are "officials," their duties are outlined by Utah law, which authorizes constables to serve and execute writs of execution.[65] And where "two statutes conflict, [courts] interpret the more specific statute as an exception to the more general statute."[66] Thus, this argument is unpersuasive.

Third, Ms. Peretto argues that Constable Defendants exceeded the scope of their official duties because she was not served with the Writ of Execution.[67] The debt collection actions in this case derive from the Writ of Execution, and constables in Utah have the power to execute and serve all legal process in Utah, which includes writs of execution.[68] In particular, Rule 64 of the Utah Rules of Civil Procedure requires that a writ of execution be served on the defendant before seizure of property takes place.[69] The Complaint alleges that the Writ was not properly served.[70] But the state court docket suggests that the Writ was in fact served.[71] And Ms. Peretto makes no factual allegations to suggest how the Writ was not properly served. The court need not accept conclusory statements, particularly those that are contradicted by the record.

---

[63] Pl.'s Constable Opp'n 7.

[64] *See* Utah Code § 12-1-1 (repealed May 3, 2023).

[65] *See* Utah Code § 17-25-1(1)(b); Utah R. Civ. P. 64; Utah R. Civ. P. 64E.

[66] *WildEarth Guardians v. Nat'l Park Serv.*, 703 F.3d 1178, 1189 (10th Cir. 2013).

[67] Pl.'s Constable Opp'n 9.

[68] Utah Code § 17-25-1(1)(b); Utah R. Civ. P. 64(a)(7), (d)(1); *see also Process*, Black's Law Dictionary (11th ed. 2019) ("A summons or writ, esp. to appear or respond in court.").

[69] Utah R. Civ. P. 64(3)(A); *see also id.* 64E(d).

[70] Second Am. Compl. ¶ 227.

[71] *See* Return of Service Writ of Execution, *Brigham Young Univ. v. Peretto*, No. 179104089 (4th Dist. Ct. Utah, Jan. 21, 2019).

11

Fourth, Ms. Peretto argues that Constable Defendants exceeded the scope of the Writ through their specific debt collection actions, and suggests that the Writ itself may have been impermissibly broad.[72] Under Utah law, a "writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."[73] Here, the Writ at issue orders any sheriff or constable in the state of Utah to "collect the judgment, with costs, interests and fees" and to "sell enough of [Ms. Peretto's] non-exempt personal property including but not limited to the following: cash, TV's, stereos, electronic equipment, gaming systems, DVD/blueray players, office equipment, cameras, works of art, collections, guns, camping equipment, furniture, livestock, machinery, farm equipment, tools and any and all vehicles to satisfy the same."[74] In other words, the only authority conferred by the Writ was to seize and sell personal property. But the Complaint alleges that Constable Defendants engaged in other behavior, such as sending letters and making phone calls to collect on the debt.[75]

Constable Defendants emphasize the precatory clause authorizing them to "collect the judgment," and argue that because there is no prescribed method for how the judgment was to be collected, they should have some discretion.[76] But their argument fails on the second premise. Both the Utah Rules of Civil Procedure and the specific Writ at issue *do* specify how a constable is to collect a judgment: by seizing and selling personal property. And indeed, the duties given to constables under the Utah Code include only executing, serving, and returning legal process.[77]

---

[72] Pl.'s Constable Opp'n 9–10.
[73] Utah R. Civ. P. 64E(a).
[74] Writ of Execution at 1–2.
[75] *See* Second Am. Compl. ¶¶ 39–70.
[76] *See* Constables' Reply 7–8.
[77] Utah Code § 17-25-1(1)(b).

Constable Defendants point to nothing in the Utah Code that would authorize them to do anything other than serve the Writ of Execution and thereafter seize and sell Ms. Peretto's property.

Constable Defendants analogize to the doctrine of qualified immunity for some support for their actions.[78] But they fail to cite any case applying that doctrine to claims under the FDCPA and the public official exception at issue here. And beyond that, this analogy is not persuasive.

In sum, the court concludes that the Complaint does not allege either element of the public official affirmative defense to a FDCPA claim. The Complaint suggests, but does not allege, that Constable Defendants are duly appointed constables under Utah law. And even if it had so alleged, it does not allege Constable Defendants were acting in performance of their official duties. To the contrary, it alleges acts outside the official duties of a constable under Utah law. Therefore, dismissal is improper. And because Constable Defendants are not exempted from suit under the FDCPA, the court need not consider Cherrington's argument that it would likewise be immunized.[79]

## II.   *Respondeat Superior*

Cherrington argues that Ms. Peretto has failed to allege that it is liable under any of the theories set forth in the Complaint because Ms. Peretto has not alleged facts sufficient to support a theory of *respondeat superior*.[80] *Respondeat superior* is the concept that extends tort liability from an agent to its principal.[81] To establish liability on the basis of *respondeat superior*, Ms.

---

[78] Constables' Reply 8–9.
[79] *Cf.* Cherrington's Mot. 3; Cherrington's Reply 3–5.
[80] *See* Cherrington Mot. 3–4.
[81] *See Burton v. Chen*, 2023 UT 14, ¶ 15, 532 P.3d 1005.

Peretto must allege facts to suggest: (1) an employment-style (or master-servant) agency relationship between Cherrington and Constable Defendants, and (2) that Constable Defendants were acting within the scope of that relationship.[82]

"In order for an agency relationship to arise, three elements must exist: (1) the principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control."[83] The Complaint alleges that Cherrington "hired" Constable Defendants "to collect" the debt from Ms. Peretto.[84] This is sufficient to allege an agency relationship, as it plausibly alleges each of the above elements, though not in great detail.

On reply, Cherrington argues that Constable Defendants cannot be its agents as a matter of law, because Constable Defendants are agents of the state and are alleged to be acting pursuant to the Writ of Execution.[85] Not only does this argument fail because it was raised for the first time on reply,[86] but it also fails because the court has already determined that the Complaint does not actually allege that Constable Defendants are constables under Utah law. And while Cherrington points out that it "is not aware of any case law [that] holds that a state agent such as a constable is an agent of a litigant's law firm when serving a writ of execution and complying with a court's command to collect a judgment," that is not persuasive, as Cherrington has also failed to cite any caselaw that suggests such a finding is categorically foreclosed by law,

---

[82] *See Aguila v. Planned Parenthood of Utah*, 2023 UT App 49, ¶ 16, 530 P.3d 959; *Rodriguez v. Kroger Co.*, 2018 UT 25, ¶ 13, 422 P.3d 815.

[83] *Sutton v. Miles*, 2014 UT App 197, ¶ 10, 333 P.3d 1279.

[84] Second Am. Compl. ¶¶ 37, 50.

[85] Cherrington Reply 5–7.

[86] *See, e.g., Mint Solar, LLC v. Savage*, No. 2:18-cv-569-PMW, 2018 WL 5924410, *3–5 (D. Utah Nov. 13, 2018) (declining to consider several arguments raised for the first time on reply).

as it argues. Indeed, if a state official were acting outside the scope of their official capacities and under the control of a private actor, the court sees no reason why Utah law would not recognize a separate agency relationship, at least in some instances. Thus, the court concludes that the Complaint sufficiently alleged an agency relationship.

But that is only part of the first element. Utah law does not recognize *respondeat superior* liability for the torts of independent contractors,[87] only servant-style agents. Typically, whether an agent is a servant-style agent or an independent contractor turns on whether the principal controls or has the right to control the manner in which the agent performs its tasks.[88] Some factors include the right to discharge the servant, the nature of the work performed, and whether the relationship is for a single piece of work.[89]

The Complaint alleges only that Cherrington hired Constable Defendants to collect the debt.[90] It does not allege facts to suggest that Cherrington had the right to control the manner in which Constable Defendants sought to collect the debt. At best, the Complaint suggests Cherrington was generally aware of their activities.[91] Critically, it does not allege an ongoing relationship between any of the Constable Defendants and Cherrington; it alleges only a single job for which Constable Defendants were hired. Indeed, while the Complaint alleges that "[C]onstable Defendants are currently committing, and have repeatedly committed, the same fraudulent, malicious, and otherwise illegal conduct complained of in this case in at least dozens

---

[87] *Magana v. Dave Roth Const.*, 2009 UT 45, ¶ 22, 215 P.3d 143.
[88] *See Mallory v. Brigham Young Univ.*, 2014 UT 27, ¶ 20, 332 P.3d 922.
[89] *Id.* (quoting *Intermountain Speedways, Inc. v. Indus. Comm'n*, 126 P.2d 22, 24 (Utah 1942)).
[90] *See* Second Am. Compl. ¶¶ 37, 50. While the Complaint alleges a number of legal conclusions related to Constable Defendants' relationship with Cherrington, *see, e.g.*, *id.* ¶¶ 82–84, the court need not accept these as true, *see Ashcroft*, 556 U.S. at 679.
[91] *Cf.* Second Am. Compl. ¶¶ 42, 43, 51, 66, 73.

of other cases in Utah over the last two years,"[92] it makes no suggestion that they were always

acting on behalf of Cherrington. Finally, the court observes that Constable Defendants are

alleged to be separate business entities from Cherrington.[93] This reinforces the court's

conclusion that Constable Defendants are not alleged to be servant-style agents and instead are

alleged to be independent contractors.

Therefore, the court concludes that because Ms. Peretto has not alleged facts to suggest

that Constable Defendants were employees or servants of Cherrington, it has failed to state a

claim against Cherrington.

## III.    Supplemental Jurisdiction

Both sets of defendants argue that the court should decline to exercise supplemental

jurisdiction over Ms. Peretto's state-law claims if it dismisses the FDCPA claim.[94] Under 28

U.S.C. § 1367(a), a district court has supplemental jurisdiction over state claims that form the

same case and controversy as a claim over which it has original jurisdiction.[95] However, it "may

decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over

which it has original jurisdiction."[96] But as the court has not dismissed the FDCPA claim as to

Constable Defendants, over which it has federal question jurisdiction under 28 U.S.C. § 1331,

the court retains supplemental jurisdiction over the remaining state-law claims.[97]

## ORDER

---

[92] Second Am. Compl. ¶ 90.
[93] *Id.* ¶¶ 6–12.
[94] *See* Constables' Mot. 9–10; Cherrington Mot. 4 n.2.
[95] 28 U.S.C. § 1367(a).
[96] *Id.* § 1367(c)(3).
[97] Constable Defendants suggest that if the court dismisses the FDCPA claim, the state claims will "substantially predominate" over the federal claims, which would permit dismissal under 28 U.S.C. § 1367(c)(2). But because this argument appears to be identical to the argument developed under 28 U.S.C. § 1367(c)(3), the court does not address it independently.

Accordingly, the court GRANTS Cherrington's Motion to Dismiss and DENIES

Constable Defendants' Motion to Dismiss. Ms. Peretto's claims against Cherrington are

dismissed without prejudice, and Ms. Peretto shall have 30 days to seek leave to amend her

Complaint.

Signed February 12, 2024.

BY THE COURT

_____
David Barlow
United States District Judge

17