UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TARA PERETTO,<br><br>     Plaintiff,<br><br>v.<br><br>MICHAEL W. ERICKSON, UTAH COUNTY CONSTABLE'S OFFICE, ROB KOLKMAN, OFFICE OF THE UTAH COUNTY CONSTABLE, LLC, UTAH PROCESS INC., CONSTABLE KOLKMAN LLC, THE CHERRINGTON FIRM, and JOHN DOES 1-5,<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER ON SUMMARY JUDGMENT MOTIONS**<br><br>Case No. 1:23-cv-00025-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Defendant The Cherrington Firm's ("Cherrington") Motion for Summary Judgment,[1] Defendants Rob Kolkman and Constable Kolkman, LLC's (collectively, "Kolkman Defendants") Motion for Partial Summary Judgment,[2] Plaintiff Tara Peretto's Motion for Partial Summary Judgment,[3] and each motion's response and reply briefing.[4] Plaintiff asserts

---

[1] Def. The Cherrington Firm, LLC's Mot. for Summ. J. ("Cherrington MSJ"), ECF No. 75, filed November 26, 2025.

[2] Defs. Rob Kolkman and Constable Kolkman, LLC's Mot. for Partial Summ. J. ("Kolkman MPSJ"), ECF No. 77, filed November 26, 2025.

[3] Mot. for Partial Summ. J. ("Pl.'s MPSJ"), ECF No. 76, filed November 26, 2025.

[4] Mem. in Opp. to The Cherrington Firm's Mot. for Summ. J. ("Pl.'s Opp. to Cherrington MSJ"), ECF No. 80, filed December 26, 2025; Reply Mem. in Further Supp. of Def. The Cherrington Firm, LLC's Mot. for Summ. J. ("Cherrington Reply"), ECF No. 87, filed January 23, 2026; Memo in Opp. to Constable Defendants' Mot. for Partial Summ. J. ("Pl.'s Opp. to Kolkman MPSJ"), ECF No. 79, filed December 26, 2025; Reply Mem. in Supp. of Defs. Rob Kolkman and Constable Kolkman, LLC's Mot. for Partial Summ. J. ("Constable Reply"), ECF No. 88, filed January 23, 2026; Def. The Cherrington Firm LLC's Mem. in Opp. to Pl.'s Mot. for Partial Summ. J. ("Cherrington Opp."), ECF No. 81, filed December 29, 2025; Reply Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s Reply"), ECF No. 85, filed January 23, 2026.

that Defendants Michael W. Erickson, Utah County Constable's Office, Rob Kolkman, Office of the Utah County Constable, LLC, Utah Process Inc., and Constable Kolkman LLC (collectively, "Constable Defendants") committed fraud and violated the Fair Debt Collection Practices Act ("FDCPA"), and that Cherrington is liable for their actions under agency law. Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[5]

## BACKGROUND

In 2017, Cherrington obtained a $2,289.03 judgment against Plaintiff for an unpaid debt.[6] One year later, Cherrington obtained a Writ of Execution from the court with the total amount due listed at $2,606.18.[7] The writ states:

> TO ANY SHERIFF OR CONSTABLE IN THE STATE OF UTAH: . . . YOU ARE COMMANDED to collect the judgment, with costs, interests and fees, and to sell enough of the Defendant(s) non-exempt personal property including but not limited to the following: cash, TV's, stereos, electronic equipment, gaming systems, DVD/blueray players, office equipment, cameras, works of art, collections, guns, camping equipment, furniture, livestock, machinery, farm equipment, tools and any and all vehicles to satisfy the same.[8]

Cherrington then provided the Writ of Execution and a Praecipe to Constable Michael Erickson.[9]

## I.   Constable Defendants' Interactions with Plaintiff

Constable Michael Erickson and Constable Rob Kolkman are sworn Constables in the State of Utah.[10] After receiving the writ, Constable Erickson began sending Plaintiff various letters. Constable Erickson first sent Plaintiff a letter stating that Plaintiff owed $2,166.27,

---

[5] *See* DUCivR 7–1(g).
[6] J. ("State Judgment"), ECF No. 76-3, filed November 26, 2025.
[7] Writ of Execution ("Writ"), ECF No. 76-5, filed November 26, 2025.
[8] *Id.*
[9] Dep. of Lacey Cherrington ("Cherrington Dep.") 64:4–8, ECF No. 76-14, filed November 26, 2025.
[10] Constable Erickson's Oath of Office, ECF No. 81-3, filed December 29, 2025; Constable Kolkman's Oath of Office, ECF No. 81-4, filed December 29, 2025.

including various fees that Constable Erickson added to the total.[11] Constable Erickson then sent

Plaintiff two letters stating "My records show you have not made your payment on this case.

Please call my office within Ten (10) days of the date of this letter."[12] During this time, Plaintiff

also made several payments to Constable Erickson and his office, which were then remitted to

Cherrington.[13] Lastly, Constable Erickson sent Plaintiff a letter informing her that Constable

Kolkman will be taking over "handling this court order" starting January 1, 2023.[14]

Sometime thereafter, Constable Kolkman sent Plaintiff a Notice of Sale, with the sale

date listed as March 2, 2023.[15] The notice stated that the sale would include "any and all non

exempt personal property" and to "CONTACT THIS OFFICE IMMEDIATELY TO MAKE A

PAYMENT OR ARRANGEMENTS TO CANCEL THE SALE."[16] Constable Kolkman sent a

follow up letter on February 24, 2023, stating "[a] sale of your personal property has been set"

---

[11] Letter from Constable Erickson to Tara Peretto ("Erickson Letter 1"), ECF No. 76-7, filed November 26, 2025. Defendants disputed this letter and the other letters on the basis that Plaintiff failed to offer evidence establishing who delivered/sent the letters and whether Plaintiff received the letters. But Defendants' arguments fail. First, the letters themselves state who they were sent to, Plaintiff, and who they were from, Constable Erickson or Constable Kolkman. *See id.* Second, Plaintiff submitted a declaration that she has received multiple written communications from Constable Erickson and Constable Kolkman. Decl. of Tara Peretto ("Peretto Decl.") ¶¶ 2, 4–5, 15, ECF No. 79-2, filed December 26, 2025. Third, a few of the exhibits also contain the envelopes the letters were sent in, with either Constable Erickson or Constable Kolkman clearly listed as the sender. *See* Letter from Constable Erickson to Tara Peretto ("Erickson Letter 4"), ECF No. 76-10, filed November 26, 2025; Letter from Constable Kolkman to Tara Peretto ("Kolkman Letter 2"), ECF No. 76-12, filed November 26, 2025. And fourth, the Kolkman Defendants admit in their motion that they engaged in "communications with Plaintiff to maintain a civil and amicable relationship." Kolkman MPSJ 5. While the letters themselves are useful for context, the court only relies in its opinion below on the fact that the Kolkman Defendants took actions that were not seizing and selling property. The Kolkman Defendants have admitted to such conduct.

[12] Letter from Constable Erickson to Tara Peretto ("Erickson Letter 2"), ECF No. 76-8, filed November 26, 2025; Letter from Constable Erickson to Tara Peretto ("Erickson Letter 3"), ECF No. 76-9, filed November 26, 2025.

[13] Dep. of Tara Peretto ("Peretto Dep.") 111:5–17, ECF No. 87-1, filed January 23, 2026; Constable Case Notes on Peretto ("Constable Notes"), ECF No. 76-23, filed November 26, 2025; March 1, 2023 Phone Call ("March 1 Phone Call") 2:22–23, 6:1–3, 6:12–17, ECF No. 76-27, filed November 26, 2025; Receipt, ECF No. 76-28, filed November 26, 2025; Cherrington Dep. 149:14–23; 153:16–21, 156:17–20, 158:14–16, 161:4–6, 168:20–169:6.

[14] Erickson Letter 4.

[15] Letter from Constable Kolkman to Tara Peretto ("Kolkman Letter 1"), ECF No. 76-11, filed November 26, 2025.

[16] *Id.*

and "[i]n order to cancel the sale you must call my office and make a payment prior to the date of the sale."[17] These notices were sent despite the fact that, in thousands of cases—including those with zero payment—the Kolkman Defendants have never followed through and seized personal property to satisfy a judgment.[18] Instead, the Kolkman Defendants "seek[] to work out a payment plan on the judgment amount."[19]

On or around March 1, 2023, Plaintiff called Constable Kolkman LLC, Constable Kolkman's business office, and spoke to Corey Revill, an employee of Constable Kolkman LLC.[20] Mr. Revill discussed the payments Plaintiff had made so far, how much was still owed, and how much Plaintiff may need to pay in order to cancel the sale.[21] In the middle of the call, Mr. Revill put Plaintiff on hold and called Cherrington, asking Cherrington whether it was accruing interest on the debt.[22] Ultimately, Mr. Revill pushed the sale date back two weeks, but stated that he would "need to hear from [Plaintiff] by then . . . with some type of opportunity to get payment in and get back on the payment plan; okay?"[23]

Shortly thereafter, Plaintiff filed this lawsuit.[24]

---

[17] Kolkman Letter 2.

[18] Answer to Third Amended Complaint ("Constable Answer") ¶ 75, ECF No. 45, filed May 14, 2024; Dep. of Rob Kolkman ("Kolkman Second Dep.") 24:9–16, 59:21–60:8, 85:22–86:7, 88:22–24, 92:3–8, ECF No. 76-16, filed November 26, 2025.

[19] *See* Kolkman MPSJ at 2 ("At no time did anyone oppose [Kolkman] Defendants' conduct of seeking to work out a payment plan on the judgment amount.").

[20] March 1 Phone Call 5:10.

[21] *Id.* 6:12–17, 12:10–16; 3:17–19.

[22] *Id.* 12:1–21, 13:13–22.

[23] *Id.* 17:24–18:13.

[24] Compl., ECF No. 1, filed March 1, 2023.

## II.   Constable Defendants' Relationship with Cherrington

Cherrington is a debt collection firm that obtained the judgment and the Writ of Execution against Plaintiff and sent the writ to the Constable Defendants.[25]

Cherrington has sent the Constable Defendants writs of execution since 2014.[26] Between 2019 and 2024, Cherrington provided around 600 writs.[27] Once Cherrington provided the constables with the writ, it ceased its own collection efforts and instead directed debtors to the constables.[28] The Constable Defendants regularly provided Cherrington with status updates on the provided writs in a spreadsheet—including writs with their status listed as "date_sale_set," "please call letter," "served setting payments," "payment pending," and "hold for attorney."[29] The Constable Defendants at times contacted Cherrington about certain writs, including during the March 1 call with Plaintiff discussed in the previous section.[30] Cherrington was aware that the Constable Defendants collected partial, periodic payments from the debtors.[31] And, as far as Cherrington was aware, the Constable Defendants never executed a seizure or sale of any property on any of the writs Cherrington provided.[32] Cherrington also retained the ability to withdraw writs from the Constable Defendants at any time.[33]

---

[25] State Judgment; Cherrington Answer to Third Am. Compl. ¶ 18, ECF No. 44, filed May 14, 2024.
[26] Cherrington Dep. 63:14–24.
[27] *Id.* 63:10–12.
[28] *Id.* 166:21–167:8.
[29] *Id.* 90:2–17, 143:12–15, 145:13–18, 146:24–147:14, 151:21–152:15, 157:3–7.
[30] *Id.* 192:30–193:5; March 1 Phone Call 11:23–13:7; Dep. of Constable Kolkman LLC 43:2–21, 44:2–5, 47:19–48:7, ECF No. 76-17, filed November 26, 2025.
[31] Cherrington Dep. 104:11–105:22, 108:22, 140:23–25, 144:23–145:5, 145:13–16, 146:24–148:5, 149:14–23.
[32] Cherrington Dep. 107:5–108:17; Def. The Cherrington Firm's Resp. and Obj'n to Pl.'s Am. Interrogatories ("Cherrington Interrog.") No. 14–15; Def. The Cherrington Firm's Responses to Pl.'s Am. Requests for Admission ("Cherrington Admissions") No. 10–12, ECF No. 76-31, filed November 26, 2025.
[33] Cherrington MSJ 7 ("[Cherrington] does not dispute that it could have withdrawn the writ of execution at any time.").

Cherrington testified that it did not believe it had any authority to monitor or supervise the constables because the constables' authority came from the state.[34] Cherrington did not draft, approve, or even know about the letters the Constable Defendants sent to Plaintiff,[35] and testified that it simply expected the Constable Defendants to execute the writ in accordance with Utah law, acting under their own statutory authority.[36] Cherrington further testified that it did not know what the Constable Defendants would do when carrying out the writ, emphasized that "the constables do what the constables do,"[37] and stated that it did not provide the constables any instructions on how to perform their duties.[38]

## STANDARD

"A party is entitled to summary judgment if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[39] "A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[40] "The nonmoving party is entitled to all reasonable inferences from the record . . . ."[41]

---

[34] Cherrington Dep. 136:17–137:7.
[35] *Id.* at 111:25–112:9, 117:6–25, 118:10–15, 119:20–25, 121:20–25, 122:2–9, 124:24–125:2, 129:19–21, 131:2–3, 132:18–133:3, 133:13–15, 146:5–10.
[36] *Id.* at 70:21–22, 91:23–93:8.
[37] *Id.* at 70:18–22, 91:23–93:8.
[38] *Id.* at 96:5–97:8.
[39] *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1114 (10th Cir. 2019) (citing *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009)).
[40] *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2014) (quoting *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002)).
[41] *Id.* at 1143–44.

**DISCUSSION**

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors."[42] To prevail on a FDCPA claim, a plaintiff must prove that: "(1) the plaintiff is a 'consumer' under [the Act]; (2) the debt at issue arose out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant is a debt collector under [the Act]; and (4) through its acts or omissions, the defendant violated [the Act]."[43] The parties' motions dispute only the third and fourth elements.

## I.     Kolkman Defendants' Motion for Partial Summary Judgment

In their motion, the Kolkman Defendants contend that: (1) they do not qualify as "debt collectors" under the FDCPA because they acted as state officials carrying out statutory duties; (2) the bona fide error defense shields them from liability; (3) their conduct was consistent with the FDCPA's underlying purpose; and (4) Plaintiff has not produced evidence to support the fraud claim. The court considers each in turn.

### A.     Debt Collectors

The third element of an FDCPA claim requires that the defendant be a debt collector. The FDCPA defines a "debt collector" as any person "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[44] But the definition expressly excludes "any officer . . . of . . . any State to the extent that collecting or attempting to

---

[42] 15 U.S.C. § 1692(e).
[43] *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022).
[44] 15 U.S.C. § 1692a(6).

collect any debt is in the performance of his official duties."[45] The court first considers whether the Kolkman Defendants are officers of the state and then considers whether they were performing their official duties.

### 1.      Officer of the State

The Kolkman Defendants claim that they are officers of the state of Utah. Constable Kolkman presents undisputed evidence that he is a sworn Constable.[46] Plaintiff does not dispute that Constable Kolkman is an officer of the state, and this court has previously found that Constable Kolkman is an officer of the state.[47] The court finds the same here.

Constable Kolkman LLC is a different matter. As a private, for-profit business entity, this court has found multiple times that Constable Kolkman LLC is not an officer of the state.[48] But here, the court finds that the parties have not provided sufficient argument on this issue to decide whether Constable Kolkman's status should extend to Constable Kolkman LLC. And in any event, since the court finds in the next section that the Kolkman Defendants were not acting in performance of their official duties, whether Constable Kolkman LLC is eligible for the exception is immaterial to the outcome of this case.

---

[45] *Id.* § 1692a(6)(C).

[46] Constable Kolkman's Oath of Office; Decl. of Rob Kolkman ("Kolkman Decl.") ¶ 8, ECF No. 77-2, filed November 26, 2025; Pl.'s Opp. to Kolkman MPSJ 2.

[47] *Peretto v. Erickson*, No. 1:23-cv-00025, 2024 WL 555140, at *3 (D. Utah Feb. 12, 2024); *Young v. Erickson*, No. 2:23-cv-420, 2025 U.S. Dist. LEXIS 57625, at *6 (D. Utah Mar. 25, 2025); *Hernandez v. Kolkman*, No. 2:23-cv-00772, 2025 WL 906200, at *3 (D. Utah Mar. 25, 2025).

[48] *See Young*, 2025 U.S. Dist. LEXIS 57625, at *6 ("[N]either federal nor Utah law includes constable LLCs or companies as state officers. . . . Defendants Utah Process, Inc., and Constable Kolkman LLC, as business entities, are not state officers."); *Hernandez*, 2025 WL 906200, at *3.

8

### 2.    Official Duties Exception

State officers are only excluded from the definition of debt collector "to the extent that collecting or attempting to collect any debt is in the performance of his official duties."[49] Thus, the question remains whether the Kolkman Defendants were performing official duties.

Under Utah law, constables are granted authority to "execute, serve, and return all process directed or delivered to him . . . throughout the state."[50] And Rule 64E of the Utah Rules of Civil Procedure authorizes constables to serve and execute writs of execution, which permits the holder to "seize property in the possession or under the control of the defendant following entry of a final judgment."[51] "But constables' powers are limited to the court's order in the documents they serve."[52] If the constable "exceed[s] the scope of their authority under the writ of execution" then they are not performing official duties.[53]

Here, the writ states:

> TO ANY SHERIFF OR CONSTABLE IN THE STATE OF UTAH: . . . YOU ARE COMMANDED to collect the judgment, with costs, interests and fees, and to sell enough of the Defendant(s) non-exempt personal property including but not limited to the following: cash, TV's, stereos, electronic equipment, gaming systems, DVD/blueray players, office equipment, cameras, works of art, collections, guns,

---

[49] 15 U.S.C. § 1692a(6).

[50] Utah Code Ann. § 17-25-1 (2023) (amended in 2024 and renumbered in 2025).

[51] Utah R. Civ. P. 64E(a) ("A writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."); Utah R. Civ. P. 64(d)(1) ("If the writ directs the seizure of personal property, the court clerk may issue the writ to an officer of any county."); Utah R. Civ. P. 64(d)(3) (describing the process required for service of the writ); Utah R. Civ. P. 64(a)(7) (defining "officer" to include constables). The Kolkman Defendants assert that, under Rule 64E, a writ of execution is available for "the payment of money." Not so. "A writ of execution is available to seize property . . . *following* entry of a final . . . order requiring . . . the payment of money." Utah R. Civ. P. 64E(a).

[52] *Young*, 2025 U.S. Dist. LEXIS 57625, at *7 (citing *Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1316 (D. Utah 2019) ("A constable's official duties are defined by the orders and writs issued by a court or a court clerk authorizing the constable's actions.")).

[53] *Sexton*, 372 F. Supp. 3d at 1318.

9

camping equipment, furniture, livestock, machinery, farm equipment, tools and any and all vehicles to satisfy the same.[54]

The Kolkman Defendants argue that working out a payment plan and the related communications is included within the writ's order "to collect the judgment" by seizing "cash." But entering into a payment plan, and accepting payment, is not the same as collecting judgment by seizing cash.[55] As this court previously explained about a nearly-identical writ:

> [T]he text of the Writ of Execution is unambiguous when read in light of the statutes and rules discussed previously. It commands the constable "to collect the judgment, . . . and to sell enough of Defendant(s) non-exempt personal property . . . to satisfy the same." The order to "collect the judgment" must be read in light of what follows ("to sell") and rules governing such writs; it does not confer freestanding and unfettered authority to collect the judgment by any means the constable wishes.[56]

So too here. The writ does not authorize entering into a payment plan, accepting payments, sending collection letters, or making collection calls.[57] Indeed, it is undisputed that Constable Kolkman did not seize or sell any of Plaintiff's possessions, as the writ commands him to do. Instead, he and his employees threatened to execute the writ while trying to get Plaintiff to make voluntary payments.[58]

The Kolkman Defendants also argue that they were merely acquiescing to the debtor's preference under Utah Rule of Civil Procedure 69A. That rule requires "[w]hen there is more property than necessary to satisfy the amount due, the officer must seize such part of the property

---

[54] Writ.

[55] *See* Kolkman MPSJ at 2 ("At no time did anyone oppose [Kolkman] Defendants' conduct of seeking to work out a payment plan on the judgment amount.").

[56] *Campbell v. Olson Associates P.C.*, No. 2:23-cv-00914, 2024 WL 3510313, at *4 (D. Utah July 23, 2024); *see also Peretto,* 2024 WL 555140, at *6 ("Both the Utah Rules of Civil Procedure and the specific Writ at issue do specify how a constable is to collect a judgment: by seizing and selling personal property. And indeed, the duties given to constables under the Utah Code include only executing, serving, and returning legal process.").

[57] *See* Erickson Letter 1; Erickson Letter 2; Erickson Letter 3; Erickson Letter 4; Kolkman Letter 1; Kolkman Letter 2; March 1 Phone Call; Receipt.

[58] *See id.*

10

as the defendant may indicate."[59] But the Kolkman Defendants did not "seize" any property. Black's Law Dictionary defines seize as "to forcibly take possession (of a person or property)."[60] Accepting periodic, voluntary payments is not forcibly taking possession. And regardless, Plaintiff's payments fell short of satisfying the judgment—so without a surplus, the debtor's preference under Rule 69A could not have come into play.

In sum, Constable Kolkman's actions were not in performance of his official duties and Constable Kolkman LLC is not an officer of the state. Thus, the Kolkman Defendants are debt collectors subject to the FDCPA.

### B.      Bona Fide Error Defense

The Kolkman Defendants next argue that the bona fide error defense shields them from liability because they made a reasonable mistake of law. In their view, they were not "debt collectors" under the FDCPA because the Writ of Execution permitted them to work out payment plans. Under the FDCPA, the bona fide error defense states: "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[61]

But this argument is a non-starter. The Supreme Court of the United States has clearly held that "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA

---

[59] Utah R. Civ. P. 69A(a).
[60] Seize, Black's Law Dictionary (12th ed. 2024).
[61] 15 U.S.C. § 1692k(c).

resulting from a debt collector's incorrect interpretation of the requirements of that statute."[62] Here, the Kolkman Defendants incorrectly interpreted the statute to read that they were not debt collectors because working out a payment plan was part of their official duties. The bona fide error defense cannot apply to this interpretation mistake. The cases that the Kolkman Defendants cite to the contrary all pre-date the Supreme Court's clear holding and thus are now inapplicable.

### C.       Comported with Purpose of FDCPA

The Kolkman Defendants next argue that their actions comported with the FDCPA's purpose because a payment plan benefited Plaintiff more than seizing and selling her personal property. The Kolkman Defendants argue that this conduct falls outside the abusive practices Congress intended to prohibit with the FDCPA.

But "[i]t is the statutory text . . . that best reflects Congress's intent."[63] "Indeed, it is quite mistaken to assume, as petitioners would have us, that 'whatever' might appear to "further[ ] the statute's primary objective must be the law.'"[64] Thus, the best indication of whether the Kolkman Defendants' actions comported with the FDCPA's purpose is whether their actions violate the statute's text—not whether Constable Kolkman or this court believes that the payment plan they offered was preferable to seizing and selling Plaintiff's property.

---

[62] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–605 (2010).

[63] *Republic of Hungary v. Simon*, 604 U.S. 115, 137 (2025).

[64] *Henson v. Santander Consumer USA Inc.,* 582 U.S. 79, 89–90 (2017) (quoting *Rodriguez v. United States,* 480 U.S. 522, 526 (1987) (*per curiam*)) ("In the end, reasonable people can disagree with how Congress balanced the various social costs and benefits in this area. We have no difficulty imagining, for example, a statute that applies the [FDCPA's] demands to anyone collecting any debts, anyone collecting debts originated by another, or to some other class of persons still. Neither do we doubt that the evolution of the debt collection business might invite reasonable disagreements on whether Congress should reenter the field and alter the judgments it made in the past. After all, it's hardly unknown for new business models to emerge in response to regulation, and for regulation in turn to address new business models. Constant competition between constable and quarry, regulator and regulated, can come as no surprise in our changing world. But neither should the proper role of the judiciary in that process—to apply, not amend, the work of the People's representatives.").

12

Beyond that, "no statute yet known 'pursues its [stated] purpose [ ] at all costs.'"[65] And it is for Congress to balance the social costs and benefits by the text of the statute.[66] For example, here, while it may or may not be true that a payment plan is better than seizing personal property, it may also be sound policy to separate governmental authority from debt collecting except when actually seizing property. Performing quintessential debt collecting actions under government authority has great potential for abuse and may undermine the perception of government authorities as neutral parties merely enforcing judicial orders. And, in any case, applying the FDCPA to the Kolkman Defendants would not prohibit them from ever negotiating a payment plan with debtors; instead, it simply requires the Kolkman Defendants to comply with the requirements of the FDCPA when they do so. So while negotiating a payment plan may be better for debtors than seizing and selling personal property, negotiating a payment plan in a manner compliant with the FDCPA is what supports the statute's purpose. Thus, the statute's text is the best indicator of how Congress balanced these competing interests.

And even if the court agreed, the Kolkman Defendants' argument relies on a scenario unsupported by the record. The Kolkman Defendants admit that, in thousands of cases— including those with zero payment—they have never seized personal property to satisfy a judgment.[67] Instead, they use the threat of seizure as a tactic to extract payment.[68] The Kolkman Defendants' counterfactual scenario is unavailing.

---

[65] *Id.* (quoting *Dodd v. United States,* 545 U.S. 353, 357 (2005)).

[66] *Id.*

[67] Constable Answer ¶ 75; Kolkman Second Dep. 24:9-16, 59:21–60:8, 85:22–86:7, 88:22–24, 92:3–8.

[68] *See* Erickson Letter 1; Erickson Letter 2; Erickson Letter 3; Erickson Letter 4; Kolkman Letter 1; Kolkman Letter 2; March 1 Phone Call; Receipt.

### D.    Fraud

Lastly, the Kolkman Defendants seek summary judgment on Plaintiff's fraud claim. The elements of fraud under Utah law are:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[69]

The Kolkman Defendants argue that "Plaintiff cannot adduce evidence demonstrating that she reasonably relied on the allegedly fraudulent statements of the Kolkman Defendants."[70] In response, Plaintiff asserts that she relied on the alleged fraudulent statements by (1) incurring attorney's fees; (2) suffering severe emotional distress; (3) calling Defendants and working out payment arrangements; and (4) making multiple payments.

As this court has explained in previous opinions, Plaintiff incurring attorney fees and suffering emotional distress cannot satisfy the reasonable reliance requirement.[71] Attorney's fees actually suggest the opposite of reliance because they demonstrate that she did not believe the statements were legally permissible.[72] And emotional distress goes to injury and damages, not to reasonable reliance.[73]

---

[69] *Fidelity Nat. Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 10, 344 P.3d 156 (quoting *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 16, 290 P.3d 930).; *accord Pace v. Parrish*, 247 P.2d 273, 274–75 (Utah 1952).
[70] Constable MSJ 11.
[71] *Campbell*, 2024 WL 3510313, at *5–6.
[72] *Id.*
[73] *Id.*

That said, making payments is sufficient to satisfy the reasonable reliance requirement.[74] Plaintiff did not make any payments towards her debt until after the Constable Defendants made the allegedly false statements—threatening to seize and sell her personal property despite never intending to actually do so.[75] Indeed, a reasonable jury could make the inference that the intention of those threats was to induce Plaintiff to make payments, which is exactly what she did.

However, this motion seeks summary judgment only as to the Kolkman Defendants and it is unclear whether Plaintiff made any payments after the Kolkman Defendants took over her case. The Kolkman Defendants took over Plaintiff's writ on January 1, 2023.[76] Plaintiff could have reasonably relied to her detriment on statements of the Kolkman Defendants only if she made payments after her first communications with the Kolkman Defendants—at the very earliest, after January 1, 2023. But no party has provided clear evidence of when Plaintiff made payments. The Kolkman Defendants did not cite to any evidence in their motion; Plaintiff's response does not make the timeline clear, and Plaintiff's declaration states "I do not recall the precise dates or amounts of each payment";[77] and Cherrington only states that "[Plaintiff] does not and cannot claim that she ever made any payments in reliance on the alleged conduct or

---

[74] *See id.* ("Put another way, [Plaintiff] must allege that the Constable Defendants made a representation that was intended to induce her to act a specific way—presumably that she would pay the judgment—that she did in fact act that way, and in doing so, acted in reliance on the veracity of the representation.").

[75] Peretto Decl. ¶¶ 4–8, 10–15, 19–20; Cherrington Dep. 153:16–21, 156:17–20, 158:14–16, 161:4–6, 168:21–169:6, 197:11–16 (confirming Plaintiff made multiple payments to the constables after the notice of sale was sent.); Receipt.

[76] Erickson Letter 4; Kolkman Letter 1.

[77] Peretto Decl. ¶¶ 12–15; *see also* Peretto Dep. 111:18–112:19.

15

statements of the Kol[k]man Defendants" but does not cite to any evidence or provide a timeline of Plaintiff's payments.[78]

The evidence does clearly show that Plaintiff called the Kolkman Defendants on March 1, 2023, based on a Notice of Sale that the Kolkman Defendants sent her.[79] But that action cannot support a fraud claim because merely making a phone call is not detrimental to the Plaintiff. While the phone call may have been an act taken in reasonable reliance on the allegedly fraudulent statements of the Kolkman Defendants, it was not "to [Plaintiff]'s injury and damage."[80]

All in all, the timing of Plaintiff's payments is unclear and makes summary judgment inappropriate on this record. If Plaintiff made any payments relying on statements from the Kolkman Defendants, then Plaintiff continues to have a fraud claim. If payments only occurred prior to communication with the Kolkman Defendants, then Plaintiff's fraud claim against the Kolkman Defendants is unsupported. But, given the lack of clarity on the timing of Plaintiff's payments from any party, summary judgment is inappropriate at this time.

In sum, none of the Kolkman Defendants' arguments are meritorious. The Kolkman Defendants' Motion for Partial Summary Judgment will be denied.[81]

---

[78] Cherrington Reply 16.

[79] Kolkman Letter 1; March 1 Phone Call.

[80] *Fidelity*, 2015 UT App 19, ¶ 10 (quoting *Webster*, 2012 UT App 321, ¶ 16); *see also Carlton v. Brown*, 2014 UT 6, ¶ 39 (requiring detrimental reliance on the alleged fraudulent statements).

[81] Plaintiff filed an objection to the Kolkman Defendants' reply brief on the grounds that it was improper and untimely. Obj. to Untimely and Improper "Reply" Mem., ECF No. 88, filed January 26, 2026. Having determined that the Kolkman Defendants' motion will be denied, the court overrules Plaintiff's objections as moot.

16

## II.      Cherrington's Motion for Summary Judgment

Cherrington seeks summary judgment on the grounds that the Constable Defendants were not the agents of Cherrington. Thus, Cherrington argues it cannot be liable for the actions of the Constable Defendants, even if the Constable Defendants' actions were unlawful. Cherrington also seeks summary judgment on Plaintiff's joint venture theory and, alternatively, on Plaintiff's fraud claims based on statements of the Kolkman Defendants.[82]

### A.      Agency

Cherrington first challenges whether it is liable for the Constable Defendants' actions under agency law. Federal agency law governs the FDCPA claim, while Utah agency law governs Plaintiff's fraud claims.

"Like other circuits, [the Tenth Circuit] utilize[s] the common-law definition from the Restatement (Third) of Agency."[83] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."[84] A principal is liable for the acts of their agent if the agent acts with actual authority or apparent authority.[85] A principal may also ratify the prior acts of another,

---

[82] The court notes that Cherrington also objected to Plaintiff's use of certain depositions as evidence against Cherrington. *See* Cherrington Reply 2–4; Cherrington Opp. 2–4. However, since the court does not rely on any of those depositions against Cherrington, the court overrules the objections as moot.

[83] *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1212 (10th Cir. 2022).

[84] Restatement (Third) of Agency § 1.01 (A.L.I. 2006).

[85] *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1251 (10th Cir. 2020) ("As a general rule, liability turns on whether the agent was acting with actual or apparent authority."); Restatement (Third) of Agency § 7.03 (A.L.I. 2006) ("(1) A principal is subject to direct liability to a third party harmed by an agent's conduct when (a) as stated in § 7.04, the agent acts with actual authority or the principal ratifies the agent's conduct and (i) the agent's conduct is tortious, or (ii) the agent's conduct, if that of the principal, would subject the principal to tort liability; or . . . (2) A principal is subject to vicarious liability to a third party harmed by an agent's conduct when . . . (b) as

17

"whereby the act is given effect as if done by an agent acting with actual authority."[86] Utah law is nearly identical, except as discussed below.[87]

Cherrington argues that (1) the Constable Defendants are not its agent because the Constable Defendants are not subject to its control; (2) even if the Constable Defendants are its agents, the Constable Defendants did not act with actual or apparent authority; and (3) Cherrington did not ratify the Constable Defendants' actions.

As a preliminary matter, the court first addresses the cases from other circuits that Plaintiff cites.[88] These cases—persuasive at most—do not address the issues presented here. Instead, they simply confirm that agency principles apply to the FDCPA if the alleged principal is also a debt collector.[89] For example, the Seventh Circuit in *Janetos v. Fulton Friedman & Gullace, LLP*, considered a "debt collector's liability for *agent's* violations."[90] It held that "[a] debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself."[91] But "[o]n the other hand, a company that is not a debt collector would not ordinarily be subject to

---

stated in § 7.08, the agent commits a tort when acting with apparent authority in dealing with a third party on or purportedly on behalf of the principal.").

[86] Restatement (Third) of Agency § 4.01 (A.L.I. 2006).

[87] *See, e.g.*, *Sutton v. Miles*, 2014 UT App 197 ¶ 10 ("In order for an agency relationship to arise, three elements must exist: (1) the principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control.").

[88] *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994); *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006).

[89] *Janetos*, 825 F.3d at 325; *Pollice*, 225 F.3d at 405 ("an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); *Fox*, 15 F.3d at 1516 (Applying vicariously liability to a debt collector for the actions of its attorney); *Clark*, 460 F.3d at 1173 (Applying "general principles of agency—which form the basis of vicarious liability under the FDCPA.").

[90] *Janetos*, 825 F.3d at 325 (emphasis added) (cleaned up).

[91] *Id.*

18

liability under the Act at all" and thus "it makes less sense to impose vicarious liability on such a company."[92] Here, there is no dispute that Cherrington is a debt collector and agency principles apply. The contested question is whether the Constable Defendants were its agents—not whether Cherrington would be liable if they were. Plaintiff's cited circuit cases do not help answer that question.

### 1. Control

Federal law and Utah law differ on how they evaluate control and the required scope of control. The court considers each in turn.

### a. Federal Law

Under federal law, "an essential element of agency is the principal's right to control the agent's actions."[93] To have control, the principal must be able "to assess the agent's performance, provide instructions to the agent, and terminate the agency relationship by revoking the agent's authority."[94] Indeed, "[t]he requirement that an agent be subject to the principal's control assumes that the principal is capable of providing instructions to the agent and of terminating the agent's authority."[95] But "[t]he right to control need not be exercised for an agency relationship to exist. It is the right of control, and not the actual exercise of control, that is an essential element of an agency relationship."[96]

---

[92] *Id.*

[93] Restatement (Third) of Agency § 1.01 cmt. f(1) (A.L.I. 2006); *see Alfaro-Huitron*, 982 F.3d at 1252 ("To be sure, all agents are subject to the control of the principal; control is an essential element of the relationship.").

[94] Restatement (Third) of Agency § 1.01 cmt. f(1) (A.L.I. 2006).

[95] *Id.* § 1.01 cmt. c.

[96] *Alfaro-Huitron*, 982 F.3d at 1252; Restatement (Third) of Agency § 1.01 cmt. c (A.L.I. 2006) ("A principal's failure to exercise the right of control does not eliminate it . . . .").

Neither does the principal's control have to extend to all aspects of the agents' actions—"The principal's control may concern *only* the overall mission, not operational details. For instance, the principal may exercise control simply by giving initial instructions to the agent on what actions to take."[97] Indeed, "the principal's 'exercise [of control] may be very attenuated and, as where the principal is physically absent, may be ineffective.'"[98] Or "a principal may delegate general authority to his or her agent to act in the ordinary course, without constant supervision or awareness of every discrete act."[99] Here, there is a material question of fact as to whether Cherrington exercises control over the Constable Defendants sufficient to establish an agent-principal relationship.[100]

On the one hand, Cherrington's testimony could support a finding that it did not exercise control over the Constable Defendants. Cherrington testified that it had no authority to monitor or supervise the constables,[101] did not draft, approve, or even know about the letters the Constable Defendants sent to Plaintiff,[102] and neither paid the Constable Defendants directly nor knew how much they retained from their collections.[103] Cherrington testified that it simply expected the Constable Defendants to execute the writ in accordance with Utah law, acting under

---

[97] *Id.*; *see also* Restatement (Third) of Agency § 1.01 cmt. c (A.L.I. 2006) ("a person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment.")

[98] *Id.* (quoting Restatement (Second) of Agency § 14 cmt. a (A.L.I 1958)).

[99] *United States v. Ackerman*, 831 F.3d 1292, 1301 (10th Cir. 2016) (Gorsuch, J.).

[100] Cherrington asserted that, under federal common law, courts consider four factors to determine the right of control. But Cherrington's cite is from a footnote in a Northern District of Alabama case that is quoting an Alabama state court case applying state law. *Romano v. Swanson*, No. CV-03-S-1829-NE, 2006 WL 8436889, at *17, n.66 (N.D. Ala. June 7, 2006) (quoting *Dickinson v. City of Huntsville*, 822 So. 2d 411, 416 (Ala. 2001)). This case plays no part in federal common law.

[101] Cherrington Dep. 136:17–23.

[102] *Id.* at 111:25–112:9, 117:6–25, 118:10–15, 119:20–25, 121:20–25, 122:2–9, 124:24–125:2, 129:19–21, 131:2–3, 132:18–133:3, 133:13–15, 146:5–10.

[103] *Id.* at 93:25–94:7, 111:13–15, 200:8–18.

their own statutory authority.[104] Indeed, Cherrington testified that it did not know what the Constable Defendants would do when carrying out the writ, that "the constables do what the constables do"[105] and that it did not provide them instructions on how to perform their duties.[106]

On the other hand, the record contains evidence from which a reasonable factfinder could conclude that Cherrington exercised at least some degree of control over the Constable Defendants. Cherrington and the Constable Defendants had an ongoing business relationship for a full decade.[107] Cherrington supplied the Constable Defendants with writs of execution and praecipes, which provided the basis for the Constable Defendants' actions and contained instructions governing the constables' actions.[108] Cherrington was aware that the Constable Defendants then collected partial, periodic payments.[109] The Constable Defendants at times contacted Cherrington about certain writs, including in the middle of a phone call with Plaintiff in this case.[110] The Constable Defendants regularly provided Cherrington with status updates on their activities—including writs with their status listed as "date_sale_set," "please call letter," "served setting payments," "payment pending," and "hold for attorney."[111] In addition, Cherrington knew that, across approximately 600 writs, the Constable Defendants never executed a sale of property.[112] And it was aware that the Constable Defendants communicated directly with debtors.[113] Cherrington also ceased its own collection efforts once a writ was

---

[104] *Id.* at 70:21–22, 91:23–93:8.
[105] *Id.* at 70:18–22, 91:23–93:8.
[106] *Id.* at 96:5–97:8.
[107] *Id.* 63:14–19, 65:10–14.
[108] Writ; Praecipe.
[109] Cherrington Dep. 104:11–105:22, 108:22, 140:23–25, 144:23–145:5, 145:13–16, 146:24–148:5, 149:14–23.
[110] *Id.* 192:30–193:5; March 1 Phone Call 11:23–13:7.
[111] Cherrington Dep. 90:2–17, 143:12–15, 145:13–18, 146:24–147:14, 151:21–152:15, 157:3–7.
[112] *Id.* 107:5–108:17; Cherrington Interrog. Nos. 14–15; Cherrington Admission Nos. 10–12.
[113] Cherrington Dep. 104:11–105:22, 108:22, 140:23–25, 144:23–145:5, 145:13–16, 146:24–148:5, 149:14–23.

provided to the Constable Defendants and would direct debtors to the constables if the debtor contacted them.[114]

Considering all the evidence, a jury could reasonably go either way. The jury could find that Cherrington's testimony is credible and no agency relationship was created. Or a jury could find that Cherrington's testimony is not credible and the Defendants' years-long course of conduct shows a principal-agent relationship. Indeed, a reasonable jury could find that Cherrington, by providing the Constable Defendants with the Writ of Execution while knowing how they would use it, were "delegat[ing] general authority to [the Constable Defendants] to act in the ordinary course, without constant supervision or awareness of every discrete act."[115] This evidence assessment and credibility determination is for a jury. Thus, there is a material dispute of fact as to whether the Constable Defendants were Cherrington's agents under federal law.

### b.      Utah Law

Similar to the Restatement, Utah law requires three elements to establish an agency relationship: "(1) the principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control."[116] However, Utah law only recognizes tort liability for employees or servant-style agents—not independent contractors.[117] To be a servant-style agent, the principal

---

[114] Cherrington Dep. 166:21–167:8.

[115] *See Ackerman*, 831 F.3d at 1301.

[116] *Sutton*, 2014 UT App 197, ¶ 10.

[117] *Magana v. Dave Roth Const.*, 2009 UT 45, ¶ 22, 215 P.3d 143 ("[O]ne who hires an independent contractor and does not participate in or control the manner in which the contractor's work is performed owes no duty of care concerning the safety of the manner or method of performance implemented."). *But see* Restatement (Third) of Agency § 1.01 (A.L.I. 2006) ("some termed independent contractors are agents while others are nonagent service providers."); Restatement (Third) of Agency § 7.03 & 7.03 cmt. b. (A.L.I. 2006) (holding principals liable for agent's conduct in more scenarios then just when the agents are employees).

must control "the manner in which the operations are to be carried out."[118] Utah courts apply a "right-of-control test" with six factors, none of which is "completely controlling":

> (1) the existence of covenants or agreements 'concerning the right of direction and control over the [agent],' (2) whether the principal has 'the right to hire and fire' the agent, (3) 'the method of payment (i.e., wages versus payment for a completed job or project),' (4) who furnishes the equipment, (5) 'the intent of the parties,' and (6) 'the business of the employer.'[119]

> Here, there is no agreement and thus the first factor is neutral.

> The second factor, the right to hire or fire the agent, is mixed. On the one hand, there is no evidence that Cherrington could hire or fire the Constable Defendant's employees;[120] but on the other hand, Cherrington could effectively fire the Constable Defendants by withdrawing the Writ of Execution and not providing them with new writs.[121] Overall, this somewhat supports a servant-style relationship.

> The third factor, the method of payment, supports the Constable Defendants being independent contractors. The Constable Defendants were not paid directly by Cherrington at all; instead, they charge statutorily permitted fees to debtors. This is evidence that Cherrington and the Constable Defendants did not have a servant-style agency relationship.

---

[118] *Mallory v. Brigham Young Univ.*, 2014 UT 27, ¶ 20, 332 P.3d 922. *But see Alfaro-Huitron*, 982 F.3d at 1252 ("The principal's control may concern *only* the overall mission, not operational details.").

[119] *Sutton*, 2014 UT App 197, ¶ 13 (quoting *Glover v. Boy Scouts of Am.,* 923 P.2d 1383, 1385–86 (Utah 1996)).

[120] *See Glover*, 923 P.2d at 1388 (finding it significant that the alleged principal did not select the volunteers associated with the alleged agent).

[121] Cherrington MSJ 7 ("[Cherrington] does not dispute that it could have withdrawn the writ of execution at any time."); *see also* Cherrington Dep. 98:4–12 (Cherrington stopped providing writs of execution to the Constable Defendants after this suit was filed.).

23

The fourth factor, regarding furnishing equipment, is also mixed. Cherrington provided the Constable Defendants with the key item the Constables used to collect from each debtor—the writ of execution—but provided no other equipment.

The fifth factor, the intent of the parties, presents a material question of fact. Cherrington testified that it did not believe it had any authority to control the Constable Defendants, which suggests an intent to not create an agency relationship. On the other hand, the parties' actions and course of conduct suggest that they intended the Constable Defendants to be Cherrington's surrogate collectors unimpeded by the FDCPA. Credibility determinations will be important on this record, and those should be made by a jury. Thus the court finds that this factor could support either side.

The sixth factor, the nature of the business, supports a servant-style agency relationship. Cherrington is a debt collector, and the court has found that the Kolkman Defendants were also acting as debt collectors in this case.[122] While the court has not ruled whether the other Constable Defendants are also debt collectors, they have engaged in quintessential debt-collector activities. Cherrington argued that this factor is neutral at worst because constables have statutory authority in Utah to execute writs. The court agrees that if the Constable Defendants acted within their official authority, this factor would support finding no agency relationship. But where the court has found that the Defendants acted outside their authority granted by law and the Writ of Execution, and instead acted as debt collectors, this factor favors a servant-style agency relationship.

---

[122] *Supra* I.A; *infra* III.A.2.

Overall, under Utah law, the court finds that there is a material dispute of fact as to whether the Constable Defendants were servant-style agents. Some factors support it, while others undermine it. On this record, the issue cannot be decided as a matter of law.

Next, even if the Constable Defendants were Cherrington's agents, for Cherrington to be liable the Constable Defendants' actions would need to have been within the actual or apparent authority Cherrington granted them.

### 2.    Actual Authority

Under the Restatement, "[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."[123] The principal's manifestation "may consist of written or spoken words or other conduct."[124] Utah law is materially identical, though it separates actual authority into express authority and implied authority.[125] Express authority encompasses the principal's direct statements, while implied authority "may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question."[126]

In short, whether the Constable Defendants acted with actual authority under both federal and state law presents material questions of fact similar to those considered regarding control.

---

[123] Restatement (Third) of Agency § 2.01 (A.L.I. 2006).

[124] *Id.* § 1.03, 2.01 cmt. b (A.L.I. 2006).

[125] *Drew v. Pac. Life Ins. Co.*, 2021 UT 55, ¶75 (citing *Zions First Nat. Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094 (Utah 1988)).

[126] *Id.* (quoting *Zions First nat. Bank*, 762 P.2d at 1095); *see also* Restatement (Third) of Agency § 2.01 (A.L.I. 2006) ("'Implied authority' is often used to mean actual authority . . . to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent. . . . [This] fall[s] within the definition of actual authority.").

25

On the one hand, Cherrington provided the Constable Defendants with the Writ of Execution, and the parties' long-standing course of conduct may imply Cherrington's manifestation of authority to engage in collection activities.[127] On the other hand, Cherrington testified that it provided no instructions or authority to the Constable Defendants and believed that it had no authority to do so since the Constable Defendants' authority was determined by law.[128] A jury must decide this dispute.

### 3. Apparent Authority

#### a. Federal Law

Under the Restatement, "[a]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."[129] Unlike actual authority's dependence on the principal's representations to the agent, apparent authority depends on the principal's representations to the third-party.[130]

Here, there is no evidence that Cherrington made any representations to Plaintiff that the Constable Defendants were acting on Cherrington's behalf. While Cherrington acknowledged that it would direct debtors to contact the Constable Defendants after passing the writ to them,[131] there is no evidence that occurred here. In fact, Plaintiff has presented no evidence of any

---

[127] Writ; Praecipe, ECF No. 76-6, filed November 26, 2025; Cherrington Dep. 90:2–17, 104:11–105:22, 108:22, 140:23–25, 143:12–15, 144:23–145:5, 145:13–18, 146:24–148:5, 149:14–23, 151:21–152:15, 157:3–7.

[128] Cherrington Dep. 70:18–22, 91:23–93:8, 96:5–97:8, 136:17–23.

[129] Restatement (Third) of Agency § 2.03 (A.L.I. 2006).

[130] *Id.* §§ 2.03, 3.03; *see also Alfaro-Huitron*, 982 F.3d at 1251 ("Apparent authority, in contrast, turns on the reasonable belief of *a third party* based on the principal's acts and communications.").

[131] Cherrington Dep. 166:21–167:8.

communication between Plaintiff and Cherrington after Cherrington provided the Constable

Defendants with the writ. Thus, the Constable Defendants did not act with apparent authority.

### b.    Utah Law

Utah law similarly focuses on the principal's manifestations to the third party under

apparent authority, but requires three elements:

> (1) that the principal has manifested his [or her] consent to the exercise of such authority or *has knowingly permitted the agent to assume the exercise of such authority*; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his [or her] position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal.[132]

As the Utah Supreme Court has explained, "the doctrine of apparent authority has its roots in

equitable estoppel, and is founded on the idea that where one of two persons must suffer from the

wrong of a third, the loss should fall on that one whose conduct created the circumstances which

made the loss possible."[133] Thus, unlike federal law, Utah law extends apparent authority to

when the principal "has knowingly permitted the agent to assume the exercise of such

authority."[134]

Here, Cherrington entirely failed to address whether it "knowingly permitted the

[Constable Defendants] to assume the exercise of such authority,"[135] even after Plaintiff raised it

---

[132] *Drew*, 2021 UT 55, ¶ 83 (quoting *Luddington v. Bodenvest Ltd.*, 855 P.2d 204, 209 (Utah 1993)).

[133] *Id.* (internal quotations omitted).

[134] *Id.* The Restatement has adopted a similar requirement but categorized it as "estoppel" instead of a sub-part of apparent authority: "A person who has not made a manifestation that an actor has authority as an agent and who is not otherwise liable as a party to a transaction purportedly done by the actor on that person's account is subject to liability to a third party who justifiably is induced to make a detrimental change in position because the transaction is believed to be on the person's account, if (1) the person intentionally or carelessly caused such belief, or (2) having notice of such belief and that it might induce others to change their positions, the person did not take reasonable steps to notify them of the facts." Restatement (Third) of Agency § 2.05 (A.L.I. 2006).

[135] *Id.*

27

in his response.[136] Thus, Cherrington has failed to show it "is entitled to judgment as a matter of law" on apparent authority under Utah law.[137]

### 4.    Ratification

Under the Restatement,[138] "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."[139] "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents."[140] Unlike actual or apparent authority, "ratification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act."[141] Thus, here, ratification is not dependent on whether Cherrington exercised control over the Constable Defendants.[142]

However, "[a] person is not bound by a ratification made without knowledge of material facts involved in the original act when the person was unaware of such lack of knowledge."[143] Or in other words, "[a] person who has ratified is not bound by the ratification if it was made without knowledge of material facts" except if the ratifier "choose[s] to ratify the action of an agent or other actor without knowing material facts."[144] "A factfinder may conclude that a

---

[136] Pl.'s Opp. to Cherrington MSJ 21–22.
[137] Fed. R. Civ. P. 56(a).
[138] As far as this court is aware, the Tenth Circuit has not addressed ratification under federal common law. But given the Tenth Circuit's direction to follow the Restatement in other agency cases, the court follows the Restatement's articulation of ratification as the federal common law in the Tenth Circuit. *See, e.g.*, *Cruz*, 42 F.4th at 1212 ("Like other circuits, we utilize the common-law definition from the Restatement (Third) of Agency.").
[139] Restatement (Third) of Agency § 4.01 (A.L.I. 2006).
[140] *Id.*
[141] *Id.* § 4.01 cmt. b; *see also Dillon v. S. Mgmt. Corp. Ret. Tr.*, 2014 UT 14, ¶ 29 ("Ratification of an agent's acts relates back to the time the unauthorized act occurred and is sufficient to create the relationship of principal and agent.").
[142] *See supra*, Part II.A.1.
[143] Restatement (Third) of Agency § 4.06 (A.L.I. 2006).
[144] *Id.* § 4.06 cmt. b & cmt. d.

28

principal has [chosen to ratify without knowledge of material facts] when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation."[145] And "not all facts are material for purposes of this doctrine."[146] "The point of materiality in this context is the relevance of the fact to the principal's consent to have legal relations affected by the agent's act."[147] "The matter is material if . . . a reasonable man would attach importance to its existence or nonexistence in determining his choice of action."[148] "The burden of establishing that a ratification was made with knowledge is on the party attempting to establish that ratification occurred."[149] Utah law is essentially identical.[150]

Plaintiff asserts that Cherrington ratified the Constable Defendants' actions when it accepted the payments from the Constable Defendants.[151] In their motion, Cherrington only challenges that Plaintiff cannot prove the ratification was made with knowledge. But the knowledge requirement here presents multiple material disputes of fact.

First, what are the material facts? "The matter is material if . . . a reasonable man would attach importance to its existence or nonexistence in determining his choice of action."[152] But

---

[145] *Id.* § 4.06 cmt. d.

[146] *Id.* § 4.06 cmt. c.

[147] *Id.*

[148] Restatement (Second) of Torts § 538(2)(a) (A.L.I 1977); Restatement (Third) of Agency § 4.06 cmt. c (A.L.I. 2006) (directing readers to the definition of materiality in the Restatement (Second) of Torts.).

[149] Restatement (Third) of Agency § 4.06 cmt. b (A.L.I. 2006).

[150] *See Dillon*, 2014 UT 14, ¶¶ 30–31 ("For ratification to occur, the principal must have knowledge of all 'material facts and circumstances relative to the unauthorized act or transaction.'"); *Zions First Nat. Bank*, 762 P.2d at 1098 ("Under some circumstances failure to disaffirm may constitute ratification of the agent's acts.") (quoting *Bradshaw v. McBride,* 649 P.2d 74, 78 (Utah 1982)).

[151] *See*, *e.g.*, Cherrington Dep. 149:14–23.

[152] Restatement (Second) of Torts § 538(2)(a) (A.L.I 1977); Restatement (Third) of Agency § 4.06 cmt. c (A.L.I. 2006) (directing readers to the definition of materiality in the Restatement (Second) of Torts.).

29

Cherrington makes no effort in its motion or reply to identify which facts are material and which are not. A reasonable jury could conclude here that the material facts are whether Cherrington knew that the Constable Defendants were engaged in debt collector-like behaviors, such as sending collection letters, making collection calls, and accepting payments. A reasonable jury also could conclude that the material facts include the content of Constable Defendants' letters and calls, or knowledge that the Constable Defendants were engaging in debt collector-like behaviors without following the FDCPA.

Second, did Cherrington have knowledge of the material facts? A reasonable jury could conclude that Cherrington knew of the Constable Defendants' actions. On one hand, Cherrington testified that it did not know what the Constable Defendants did.[153] On the other hand, the Constable Defendants regularly provided Cherrington with status updates on their activities— including writs with their status listed as "sales date and time set," "please call letter," "served setting payments," "payment pending," and "hold for attorney."[154] A jury could either credit Cherrington's testimony, or the jury could conclude that Cherrington had knowledge of the Constable Defendants' actions based on the status updates or the parties' long-standing course of conduct.

Third, even if Cherrington did not have knowledge of the material facts, did Cherrington choose to ratify the acts anyway? A reasonable jury could conclude that the Constable Defendants' status updates, partial periodic payments, and other information provided to

---

[153] Cherrington Dep. 70:21–22, 91:23–93:8, 111:25–112:9, 117:6–25, 118:10–15, 119:20–25, 121:20–25, 122:2–9, 124:24–125:2, 129:19–21, 131:2–3, 132:18–133:3, 133:13–15, 136:17–23, 146:5–10.
[154] *Id.* 90:2–17, 143:12–15, 145:13–18, 146:24–147:14, 151:21–152:15, 157:3–7.

Case 1:23-cv-00025-DBB   Document 96   Filed 04/30/26   PageID.1831   Page 31 of 37

Cherrington "would have led a reasonable person to investigate further."[155] The jury could conclude that Cherrington's acceptance of the payments was a choice to ratify the actions without knowledge of the material facts.

All in all, ratification under federal and state law presents multiple disputes of material fact. The jury must determine the resolution of those disputes.

### B.      Joint Venture

In the Third Amended Complaint, Plaintiff briefly asserted that Cherrington was liable for the conduct of the Constable Defendants under a joint venture theory.[156] Cherrington seeks summary judgment on that theory,[157] and Plaintiff failed to address this issue in any form. Accordingly, Plaintiff has conceded this argument.[158] And in any event, Plaintiff has not presented any evidence to support its claims that Cherrington and the Constable Defendants were engaged in a joint venture.

### C.      Fraud

Cherrington also seeks summary judgment on any fraud claims based on statements of the Kolkman Defendants. The court already discussed above whether Plaintiff's fraud claim against the Kolkman Defendants is subject to summary judgment.[159] The same considerations apply here, and Cherrington's motion is denied on this point.

---

[155] *See* Restatement (Third) of Agency § 4.06 cmt. c (A.L.I. 2006).
[156] Compl. ¶ 83.
[157] *See* Cherrington MSJ 11–13.
[158] *See Hinsdale v. Liberal*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming dismissal of plaintiff's claim after district court concluded that plaintiff had abandoned claim because he failed to address it in his memorandum opposing summary judgment); *see also Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992).
[159] *Supra*, I.D.

31

All in all, Cherrington's Motion for Summary Judgment is granted in part and denied in part. Cherrington's motion is granted as to joint venture and apparent authority under federal law (but not under Utah law). Cherrington's motion is denied as to all other parts.

## III.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment on two issues: First, that the Kolkman Defendants violated the FDCPA; and second, that Cherrington is liable for any violations of the FDCPA committed by the Constable Defendants.

### A.    FDCPA Violations

Plaintiff seeks summary judgment that the Kolkman Defendants violated 15 U.S.C. §§ 1692e(2)(A), (4), (5), (10) and (11). The Kolkman Defendants did not file an opposition motion, and no party has opposed Plaintiff's arguments that the Kolkman Defendants violated these sections of the FDCPA. Instead, Cherrington argued in their response that the Kolkman Defendants are not debt collectors and thus are not subject to the FDCPA. The court first considers the effect of the Kolkman Defendants' failure to file an opposition, then whether the Kolkman Defendants are debt collectors, and finally the asserted violations.

#### 1.    Kolkman Defendants' Failure to File a Response

In her reply brief, Plaintiff asserted that the Kolkman Defendants' failure to file a response results in an admission of Plaintiff's material facts and a concession of liability. Under Rule 56(e), if a party "fails to address another party's assertion of fact . . . the court *may*: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue

32

any other appropriate order."[160] Here, where Plaintiff's and Defendants' motions are interrelated and Plaintiff's arguments have been addressed in substance, the court will not artificially constrain its consideration of Plaintiff's motion—especially when doing so (1) may cause nonsensical rulings; (2) would impair the defense of the other Defendants; and (3) would ignore Plaintiff's legal burden.

First, under Plaintiff's argument, the court could be forced into nonsensical rulings. For example, the court could grant both Plaintiff's Motion for Partial Summary Judgment against the Kolkman Defendants and the Kolkman Defendants' Motion for Partial Summary Judgment against Plaintiff. Or the court could deny Plaintiff's motion against the Cherrington firm on the grounds that the Constable Defendants were state officials acting in their official capacities and then grant Plaintiff's motion against the Kolkman Defendants on the same exact issue. Such nonsensical results are not required simply because the Kolkman Defendants did not file a response to Plaintiff's motion.

It would also impair the other Defendants' defense. In part, Cherrington asserts that it is not liable because the actions of the Constable Defendants were not unlawful.[161] To hold that the Kolkman Defendants have conceded liability when they clearly have not from the greater context of all the interrelated motions would unfairly impair Cherrington's defense. And in the event of a jury trial, the other Constable Defendants' defense would also be impaired—the jury would likely unfairly wonder why the Kolkman Defendants are liable as a matter of law for very similar

---

[160] Fed. R. Civ. P. 56(e).
[161] *See* Cherrington MSJ 2, n.1.

actions to those of the other Constable Defendants. This would likely create prejudice against the other Constable Defendants.

Lastly, and most importantly, Plaintiff still must carry her legal burden. As stated in Rule 56(e), the court may "grant summary judgment *if* the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." At summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[162] Regardless of any opposition or the lack thereof, Plaintiff still must meet her legal burden in order for the court to grant summary judgment.

For these reasons, the court rejects Plaintiff's argument that the Kolkman Defendants have conceded liability.

### 2.      Debt Collectors

The court already considered whether the Kolkman Defendants are debt collectors under the FDCPA in the context of the Kolkman Defendants' Motion for Partial Summary Judgment.[163] The same reasoning applies here. Thus, the court holds as a matter of law that the Kolkman Defendants are debt collectors subject to the FDCPA.

### 3.      Violations

Next, the court considers whether Plaintiff has shown that the Kolkman Defendants violated the FDCPA. Under 15 U.S.C. § 1692e, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any

---

[162] Fed. R. Civ. P. 56.
[163] *Supra* I.A.

debt."[164] Section 1692e provides a non-exhaustive list of "practices that violate these prohibitions."[165] But, as the Tenth Circuit has explained, "to be actionable, 'statement[s] must be material, which is to say capable of influencing the consumer's decision-making process.'"[166] And, in the Tenth Circuit, materially is measured under the "reasonable consumer" standard, not under the least-sophisticated consumer standard applied by some other circuits.[167] "In summary, a representation violates § 1692e only if it is *materially* false, deceptive, or misleading to the *reasonable consumer*."[168]

Plaintiff argues that the Kolkman Defendants violated 15 U.S.C. § 1692e generally, as well as the specific practices listed in (2)(A), (4), (5), (10) and (11). The court notes that no party has directly opposed Plaintiff's argument that these violations occurred—only that (1) the FDCPA does not apply to Kolkman Defendants, which the court has rejected, and (2) disputing facts in response to Plaintiff's statement of undisputed fact. Nevertheless, as the court previously discussed, Plaintiff must still meet her burden in order to be granted summary judgment.

Here, Plaintiff applied incorrect legal standards. Instead of materiality, Plaintiff asserted that "[t]he Act is 'extraordinarily broad' and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations."[169] And instead of applying the reasonable consumer standard, Plaintiff asserted that "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from

---

[164] 15 U.S.C. § 1692e.
[165] *Tavernaro*, 43 F.4th at 1067 (citing 15 U.S.C. §§ 1692e, 1692f).
[166] *Id.* (quoting *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 894 (6th Cir. 2020)).
[167] *Id.* at 1068–1072.
[168] *Id.* at 1072 (emphasis added).
[169] Pl.'s MPSJ 12 (quoting *Blevins v. Hudson & Keyse, Inc.,* 395 F.Supp.2d 655, 658 (S.D. Ohio 2004)).

the perspective of the least sophisticated debtor."[170] Plaintiff applied these incorrect standards throughout her motion.[171]

Where Plaintiff has applied the wrong legal standards, this court will not make Plaintiff's arguments for her under the correct legal standards.[172] Thus, Plaintiff's motion fails to show that "the movant is entitled to judgment as a matter of law."[173]

### B.      Agency

Next, the court considers Plaintiff's argument that Cherrington is liable for the unlawful actions of the Constable Defendants. The court previously considered this same issue in the context of Cherrington's Motion for Summary Judgment.[174] There, the court granted Cherrington's motion as to apparent authority under federal law;[175] denied it under Utah law;[176] and found material disputes of fact as to whether Cherrington exercised sufficient control over the Constable Defendants;[177] whether the Constable Defendants were acting with actual authority;[178] and whether the Cherrington Defendants ratified the Constable Defendants actions.[179] The same reasoning applies here.[180] Thus, since there are material disputes of fact, the court will not grant Plaintiff's motion on this point.

---

[170] *Id.* (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)).

[171] *See, e.g.*, Pl.'s MPSJ 18–20, 22. This court has previously found in related cases that these standards do not reflect the governing law in the Tenth Circuit. *See Young*, 2025 U.S. Dist. LEXIS 57625.

[172] *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("[T]he court should not assume the role of advocate.").

[173] Fed. R. Civ. P. 56(a).

[174] *Supra*, II.A.

[175] *Supra,* II.A.3.a.

[176] *Supra,* II.A.3.b.

[177] *Supra,* II.A.1.

[178] *Supra,* II.A.2.

[179] *Supra,* II.A.4.

[180] *See supra* II.A. The court notes that the only place the analysis may differ is as to apparent authority under Utah Law. In considering Cherrington's motion, the court simply held that Cherrington did not address whether Cherrington knowingly allowed the Constable Defendants to assume authority. *Supra* II.A.3. Here, Plaintiff's

In sum, the court will grant in part and deny in part Plaintiff's Motion for Partial Summary Judgment. The motion is granted in that the Kolkman Defendants are debt collectors subject to the FDCPA but is denied in all other respects.

## ORDER

The Kolkman Defendants' Motion for Partial Summary Judgment[181] is DENIED. Cherrington's Motion for Summary Judgment[182] is GRANTED in PART and DENIED in PART. Cherrington's motion is granted as to joint venture and apparent authority under federal law but is denied as to all other parts. Plaintiff's Motion for Partial Summary Judgment[183] is GRANTED in PART and DENIED in PART. Plaintiff's motion is granted in that the Kolkman Defendants are debt collectors subject to the FDCPA but is denied in all other respects.

Signed April 30, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

motion did not address the issue until their reply. Pl.'s Reply 14–15. But asserting an argument for the first time in a reply is impermissible, and thus summary judgment cannot be granted on apparent authority under Utah law.

[181] ECF No. 77.
[182] ECF No. 75.
[183] ECF No. 76.

37